### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **No. 25-cr-204-DLF** |
| **JEVAUN HODGE,** | |
| **Defendant.** | |

### <u>MEMORANDUM OPINION</u>

Mr. JeVaun Hodge suffers from a symptomatic inguinal hernia. He has known about his hernia since before his April 9, 2025, arrest and incarceration at the D.C. Jail. Since April 9, 2025, Mr. Hodge has repeatedly complained to the Court of inadequate medical care. *See* Motion for Release (Mot. for Release), ECF No. 25; First Supplemental Motion for Release, ECF No. 33; Second Supplemental Motion for Release, ECF No. 56. On February 5, 2026, Mr. Hodge filed a Third Supplemental Motion for Release related to the same issue. *See* Third Supplemental Motion for Release (Third Supp. Mot.), ECF No. 61.

For the reasons set forth below, the Court ORDERS Mr. Hodge be released forthwith for a two-week medical furlough, as further detailed below.

### I.      <u>BACKGROUND</u>

Upon arrival at the jail, Mr. Hodge notified the facility of his hernia. Mr. Hodge immediately requested to be evaluated by a medical professional at the jail. *See* Show Cause Hearing (Feb. 6, 2026) (Mr. Hodge Testimony). *See id.* Despite these requests, Mr. Hodge has yet to be seen by a medical professional at the jail. *See id.* During this time, the hernia Mr. Hodge suffers from has grown from the size of a raisin to a grapefruit and now causes great pain.

On October 29, 2025—and only after court intervention—the jail transported Mr. Hodge to MedStar Trauma Clinic at Washington Hospital Center. *See id.* Doctors at MedStar determined that Mr. Hodge required surgery to treat his hernia. *See* Mot. for Release at 2. The court again had to intervene to prompt the scheduling of the surgery. Initially, MedStar scheduled it for January 23, 2026. *See* Third Supp. Mot. at 1. However, the surgery did not occur then.[1]

MedStar rescheduled Mr. Hodge's surgery to February 5, 2026. *See* Exhibit to Third Supp. Mot. for Release 1, ECF No. 61. MedStar informed the D.C. Jail that Mr. Hodge had to arrive at the hospital at 6:00 a.m. for preoperative preparation. *See id.* at 2. However, the D.C. Jail failed to timely transport Mr. Hodge; he arrived at the hospital at 7:40 a.m. *See id.* (Email chain between Mr. Townsend, Judge Friedrich's chambers, and Mr. Hodge's attorneys). MedStar had to reschedule Mr. Hodge's surgery due to his late arrival. *See* Third Supp. Mot. for Release at 2.

Given this failure, Mr. Hodge filed a Third Supplemental Motion for Release on February 5, 2026. *See id.* Mr. Hodge asked for temporary release to ensure that he timely arrives for surgery and so that he has a safe place to recover thereafter. *See id.*

On February 6, 2026, the Court held its first of three hearings on this motion. At the hearing, D.C. Jail staff apologized for their mistake in timely transporting Mr. Hodge. They notified the Court and Mr. Hodge that his new surgery date was February 12, 2026, at 6:00 am.

On February 9, 2026, the Court heard from Mr. Hodge's treating surgeon, Dr. Jackson. Dr. Jackson stated the surgery itself should last an hour followed by two hours of postoperative recovery. Dr. Jackson testified that there are two primary concerns after surgery: hernia recurrence

---

[1] During the emergency hearing on February 6, 2026, jail staff represented to the Court that MedStar rescheduled the surgery. This was the first time anyone communicated that information to Mr. Hodge. This has been a repeated theme: Mr. Hodge has been the last to know what is happening with his treatment.

and infection. *See id.* Dr. Jackson explained that hernia repair typically requires 6 to 8 weeks of recovery time. *See id.* The healing process during this time is exponential, not linear. *See id.* The most critical time is the first two weeks after the procedure. *See id.* To mitigate the risk of infection during this critical period, Dr. Jackson recommends that patients avoid unclean spaces, minimize contact with other people, especially those who are sick, and regularly clean the wound site. *See id.* To mitigate the risk of recurrence, Dr. Jackson recommends that patients avoid most physical activities. *See id.* Dr. Jackson also noted that patients typically require regular access to pain medication, including opioids, during the initial days of recovery post-surgery. *See id.*

On February 10, 2026, the Court ordered Mr. Hodge's released as described below.

## II.   LEGAL STANDARD

Section 3142(i) of the Bail Reform Act provides that a "judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for [a] compelling reason." 18 U.S.C. 3142(i). A defendant moving under § 3142(i) bears the burden of showing that he is entitled to relief. *United States v. Riggins*, 456 F. Supp. 3d 138, 149 (D.D.C. 2020).  "[A]n assessment about whether to grant a defendant temporary release under 18 U.S.C. § 3142(i) also includes a consideration of the Bail Reform Act as a whole." *United States v. Gilbert*, 511 F. Supp. 3d 669, 674 (E.D. Pa. 2021).

"[C]ourts have increasingly found that a defendant's unique vulnerability to [illness], when combined with other appropriate considerations, such as the original grounds for the defendant's pretrial detention, . . . can justify a defendant's temporary release." *United States v. Thomas*, 456 F. Supp. 3d 69, 78 (D.D.C. 2020) (internal quotations removed).  "[T]he medical need" does not have to be "grave . . . to constitute a 'compelling reason.'" *United States v. Kindell*, No. 323-cr-

039, 2024 WL 841098, at *3 (D. Nev. Feb. 27, 2024). Ultimately, there is no "one-size-fits-all, blanket approach" to resolving this issue. *United States v. Nikparvar-Fard*, 18-cv-101, 2020 U.S. Dist. LEXIS 87370, at *10 (E.D. Pa Apr. 20, 2020).

### III.    DISCUSSION

#### A.    There is a Compelling Reason for Release

The Court's resolution of the pending motion primarily turns on the answer to two questions: (1) whether the jail can ensure Mr. Hodge receives adequate care and (2) whether the conditions at the jail allow for safe recovery.

Mr. Hodge has testified about his experience at the D.C. Jail. *See* Show Cause Hearing (Feb. 6, 2026); Status Hearing (Feb. 9, 2026) (Mr. Hodge's testimony). Among other things, he described finding live rodents in his cell and the inability to shower due to plumbing problems and repeated lockdowns. *See id.* These incidents are not unique to Mr. Hodge. A recent audit of the D.C. Jail by the Office of the District of Columbia Auditor and Council for Court Excellence "offers the most comprehensive review to date of facility operations, documenting a crisis marked by rising deaths, structural decay, staff shortages, and inadequate medical and behavioral health care." Report by the Office of the District of Columbia Auditor and Council for Court Excellence (Report on D.C. Jail) (May 28, 2025) (report available at https://perma.cc/4SPB-XD9U). "Issues mentioned more frequently in [] inspection reports [of the D.C. Jail] were mold, rodents, insects, and feces." *Id.* From this, the Court concludes that Mr. Hodge cannot safely recover in the unsanitary conditions at the D.C. Jail during the two-week critical healing period.

Beyond the dangerous conditions at the D.C. Jail, Mr. Hodge has experienced repeated failures in his care. Among other things, the jail has: ignored Mr. Hodge's numerous requests over ten months to be seen by medical staff at the jail; failed to scheduled imaging tests and surgery,

until the court intervened; and failed to transport Mr. Hodge to his surgery on time. These repeated failures are a standalone compelling reason for temporary release. *See United States v. Parton*, No. 21-cr-107, 2023 WL 2951540, at *2 (E.D. Tenn. Apr. 7, 2023) (denying temporary release because jail had provided defendant with medical care and assistance with colostomy bag), *report and recommendation adopted*, 2023 WL 2957803 (E.D. Tenn. Apr. 14, 2023). What is especially problematic is that Mr. Hodge repeatedly "raise[d these] problems with his medical care" to the D.C. Jail staff to no avail. *Id.* In sum, Mr. Hodge has "explain[ed] why his detention would prevent him from obtaining adequate treatment [and safe postoperative recovery] for his hernia condition. *United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (denying without prejudice request for temporary release where defendant failed to explain problems with care inside the jail).

In response, the D.C. Jail has submitted a declaration that it has the capability to monitor and care for Mr. Hodge. But the Court is "not obliged to accept [an] affidavit without question[;]" rather the Court must exercise its discretion to determine truthfulness and reliability. *Humane Soc'y of United States v. United States Dep't of Agric.*, 549 F. Supp. 3d 76, 88 (D.D.C. 2021) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). This means weighing the plausibility of the declaration against the evidence of record. *See id.* It is implausible that the same jail that has failed repeatedly to care for Mr. Hodge can now miraculously manage the much more complicated task of postoperative recovery.

The recent audit of the D.C. Jail confirms these to be systemic problems. The audit revealed that the D.C. Jail "does not provide all the services people in the jail might need, *particularly when it involves specialists or surgery*." Report at D.C. Jail at 90 (emphasis added). The report cites to a class action lawsuit "that is related to the [D.C. Jail's] alleged failure to provide constitutionally required health care, including systemic failures to schedule specialist appointments for residents;

regular cancelation of these appointments by [the D.C. Jail]; failure to transport residents to these appointments and failure to give residents their prescribed medications." *Id.* Other lawsuits allege denial of surgeries and the withholding of medications. *See id.* These complaints come not only from the residents of the D.C. Jail. "[T]wo medical providers at MedStar Washington Hospital Center's Surgery Center confirmed that jail resident appointments were often missed. They stated that, either due to missed appointments or failure to schedule appointments for residents, people from the jail often came in weeks or months after it was medically necessary." *Id.* at 91. Based on these facts, the Court finds the D.C. Jail's promises to be empty.

Accordingly, the Court finds Mr. Hodge has demonstrated a compelling reason for a medical furlough. *See Gilbert*, 511 F. Supp. 3d at 676.

### B.    The Four Factors Weigh in Favor of Release

"Pretrial detention is the exception, not the norm, under the Bail Reform Act." *United States v. Klein*, 533 F. Supp. 3d 1, 5 (D.D.C. 2021) (citing *United States v. Salerno*, 481 U.S. 739, 755 (1987)). "[T]o the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released." *United States v. Gilbert*, 511 F. Supp. 3d 669, 674 (E.D. Pa. 2021) (citing 18 U.S.C. § 3142). In assessing whether any such conditions can be fashioned, courts consider the four factors enumerated in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

Given the limited duration of release, the Court is confident that it can fashion conditions that will reasonably assure Mr. Hodge's future presence in court and the safety of the community.

As to the first, third, and fourth factors: Mr. Hodge was not indicted for a violent offense. Mr. Hodge was indicted of mere possession of a firearm, not firing or brandishing it. Mr. Hodge's criminal history involves nonviolent acts. Moreover, Mr. Hodge will have limited mobility during his two-week recovery. In this compromised state, it is difficult to imagine—as is required by *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021)—a scenario in which Mr. Hodge could escape from his house, purchase a firearm, and then present a danger to the public with it. Indeed, given his vulnerability for infection from being around other people, Mr. Hodge would be putting his own safety at risk just by being around other people at all. *See Gilbert*, 511 F. Supp. 3d at 676 ("the Court is assured that Defendant would remain in the household given the risk of contracting COVID-19 if he exposed himself to the public"). Thus, "the reality is that the risk of commission of future crime is diminished." *Gilbert*, 511 F. Supp. 3d at 676. Moreover, "if Defendant were released to home confinement at [his fiancé's] house—a single family home in [Virginia]—he could protect himself from the [infection] by . . . practicing social distancing from family members [and limiting his contact with other visitors]." *Id.* at 678. "And since he will be living with his [fiancé and step-daughter], both of whom have expressed their willingness to monitor Defendant's compliance with the bail conditions, Defendant will have the benefit of a stable environment." *Id.* at 677.

As to the second factor, "[n]eedless to say, the Government believes it has a strong case and the weight of the evidence is a factor that could influence continued detention. But the Court cannot overlook the fact that Defendant is presumed innocent." *Gilbert*, 511 F. Supp. 3d at 677–78. In addition, the weight of the evidence factor "is the least important." *United States v. Padilla*, 538 F. Supp. 3d 32, 43 (D.D.C. 2021) (quoting *United States v. Gebro*, 948 F.2d 1118, 1121–22 (9th Cir. 1991)). In sum, the Bail Reform Act factors support temporary release and the stringent

conditions of release detailed below both ensure Mr. Hodge's best chance for recovery while reasonably assuring the Court that he will not pose a danger to the community.

C.    Release Conditions

As detailed in the separately docketed Conditions of Release:

- Mr. Hodge is subject to home incarceration;

- Mr. Hodge may only leave his residence for his surgery, follow up appointment in two weeks with his treating physician, and medical appointments approved by his Pre-trial Services Agency ("PSA") officer;

- Mr. Hodge and/or his third-party custodian will contact his PSA officer daily to confirm compliance with conditions of release; and

- Mr. Hodge is to self-surrender to the D.C. Jail within 24 hours of his two-week follow up appointment post surgery.

The Court will hold a remote status hearing on February 25, 2026, to ensure that Mr. Hodge has scheduled the two-week follow-up appointment.

## IV.    CONCLUSION

In 1840, Barthélemy Maurice said "Do you want to appreciate the degree of morality a people has reached, to measure, so to speak, its civilization? See how it treats its prisoners." From this test, we have failed. It is disturbing that in 2026 incarcerated people are still not given the basic dignities they deserve.

Date: February 11, 2026

_____

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE